IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THREADNEEDLE STREET, LLC, | ) | Case No. 10-40314 EEB |
| a Colorado limited liability company, | ) | |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| EIN: 36-4336726 | ) | |

**DEBTOR'S AMENDED PLAN OF LIQUIDATION DATED JUNE 10, 2011**

Threadneedle Street, LLC, a Colorado limited liability company (the "Debtor"), hereby proposes its Amended Plan of Liquidation Dated June 10, 2011 (the "Plan") for the purpose of providing fair and equitable treatment of the Claims of all of the Debtor's Creditors.

## INTRODUCTION

On December 2, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code, Title 11, United States Code, §§101 *et seq.* (the "Bankruptcy Code"). Since the Petition Date, the Debtor has remained in possession of its property and has conducted its financial affairs as a debtor in possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

As discussed below, Claims and Interests are classified in six separate classes under the Plan. The Debtor reasonably believes that all Claims will be paid in full and with interest as applicable under the Plan. Unclassified Claims and Claims classified under Classes 1, 2 and 3 in the Plan are not impaired by the Plan. Therefore, the holders of these Claims are not entitled to vote on the Plan. In addition, by agreement of the parties, the DIP Loan is not treated as an Administrative Claim under the Plan and shall become the sole responsibility of Moore Land and Cattle, LLC as of the Confirmation Date.

All Claims classified under Classes 4 and 5 in the Plan are impaired because they will not be paid in full until the Effective Date. Furthermore, it is possible that Class 4 Claims and Class 5 Claims will not be paid in full in the unlikely event that the net proceeds realized from the sale of the Real Estate are insufficient for this purpose. Consequently, the holders of all Claims classified under Classes 4 and 5 in the Plan are entitled to vote on the Plan.

The Interests of the Debtor's equity holders are classified under Class 6 in the Plan. Class 6 Interests are not impaired under the Plan, and the holders of such Interests are not entitled to vote on the Plan.

## ARTICLE I
## DEFINITIONS AND CONSTRUCTION

1.1 "Adequate Protection Payments" shall mean monthly payments of interest at the default rate of interest and each in the amount of $22,500.00 relating to the Class 3 Claims to be made by or on behalf of the Liquidating Debtor to the holder of the Class 3 Claims commencing on the first Business Day of the month after the Confirmation Date, and continuing on the first Business Day of each month thereafter to and including the Effective Date when the principal amount due and owing on account of the Class 3 Claims in the amount of $3,000,000.00 is paid in full; provided, however, the Debtor reserves the right to request approval of the Bankruptcy Court to pay in full the principal amount due and owing on account of the Class 3 Claims prior to the Confirmation Date which, if allowed and paid prior to the Confirmation Date, will obviate the need to pay Adequate Protection Payments pursuant to the Plan.

1.2 "Administrative Claim" shall mean, except as provided below, any cost, Claim or expense of the administration of this chapter 11 case allowed and entitled to priority in accordance with the provisions of §§503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's estate and all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under §§330 or 503 of the Bankruptcy Code against the Debtor's estate or under Chapter 123 of Title 28, United States Code; provided, however, Administrative Claim shall not include the DIP Loan because the DIP Loan shall be assumed and become solely payable by MLC, and therefore the DIP Loan is not treated under the Plan.

1.3 "Allowed Claim" shall mean any Claim against the Debtor, provided: (a) a proof of claim was timely and properly filed before the Bar Date, pursuant to order of the Bankruptcy Court, or in accordance with the provisions contained in the Plan, or, if no proof of claim was filed, which has been or hereafter is listed by the Debtor in the Debtor's schedules or amended schedules as liquidated in amount and neither disputed nor contingent; and (b) in either such case, a Claim as to which no objection to the allowance thereof has been interposed on or before the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of a claimant. Unless otherwise specified herein or by order of the Bankruptcy Court, Allowed Claims shall not include interest on such Claims for the period from and after the Petition Date, nor shall Allowed Claims include any Claim that may be disallowed under §502(d) of the Bankruptcy Code.

1.4 "Bankruptcy Code" shall mean Title 11 of the United States Code, as in force and effect on December 2, 2010, and any and all amendments thereto through the Confirmation Date.

1.5 "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Colorado, including the United States Bankruptcy Judge presiding in this case, or such other court as may have jurisdiction over chapter 11 cases.

1.6 "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Rules of the United States District Court for the District of

Colorado, the Rules of the United States Bankruptcy Court for the District of Colorado, and any other rules incorporated by reference by such rules, as the same may be amended from time to time, and as are applicable to cases pending before the Bankruptcy Court.

1.7 "Bar Date" shall mean March 28, 2011, the date fixed by Final Order entered by the Bankruptcy Court for the filing of (a) Pre-Petition Claims that are not held by governmental units, and (b) Pre-Petition Claims that are held by governmental units.

1.8 "Business Day" shall mean any day on which federal and state chartered banks are open generally to the public to conduct ordinary commercial banking business in Denver, Colorado.

1.9 "Cash" shall mean cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks, and commercial paper of any entity, including interest earned or accrued thereon.

1.10 "Claim" shall mean any right to payment or equitable remedy arising under or encompassed in §101(5) of the Bankruptcy Code, including, without limitation, any right to payment from the Debtor or debtor in possession that arose on or before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.11 "Closing Date" shall mean the date on which the sale of the Real Estate as defined below is consummated.

1.12 "Confirmation Date" shall mean the date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code; provided, however, that if the Confirmation Order or consummation of the Plan is stayed on motion pending appeal, then the Confirmation Date shall be the date of entry of a Final Order vacating such stay provided that the Confirmation Order is in full force and effect on such date.

1.13 "Confirmation Order" shall mean the Final Order entered by the Bankruptcy Court confirming the Plan and approving the transactions contemplated therein.

1.14 "Contested Claim" shall mean a Claim as to which an objection in writing has been timely filed in accordance with the Bankruptcy Rules, any order of the Bankruptcy Court, or the provisions contained in the Plan, and until such time as a Final Order is entered by the Bankruptcy Court resolving or determining such objection.

1.15 "Creditor" shall mean a person, partnership, corporation or entity that is the holder of a Claim against the Debtor that arose on or before the Petition Date, or a Claim against the Debtor's estate of any kind specified in §§502(g), 502(h) or 502(i) of the Bankruptcy Code.

3

1.16 "Debtor" shall mean Threadneedle Street, LLC, a Colorado limited liability company, the Debtor and debtor in possession in the above-captioned chapter 11 case.

1.17 "DIP Loan" shall mean that certain line of credit approved by the Bankruptcy Court by Final Order after notice and a hearing pursuant to which lender, as defined in said Final Order, extended certain financial accommodations to the Debtor as debtor in possession during the administration of the chapter 11 case.

1.18 "Disbursement Agent" shall mean the Liquidating Debtor, or such person or entity, including any replacement thereof or successor thereto, as may be designated by the Liquidating Debtor, and approved by the Bankruptcy Court if and as necessary or appropriate, to receive as custodian and to distribute the funds to the holders of Allowed Claims pursuant to the Plan.

1.19 "Distribution Date" shall mean the first Business Day occurring on or after the thirtieth (30th) day after the Closing Date.

1.20 "Disclosure Statement" shall mean that certain disclosure statement approved by the Bankruptcy Court and accompanying the Plan.

1.21 "Effective Date" shall mean the first Business Day occurring on or after the fifteenth (15th) day after the Confirmation Date.

1.22 "Final Order" shall mean an order or a judgment of a court which (a) has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek review or rehearing has expired and as to which any right to appeal, reargue, petition for certiorari or rehearing has been waived in a manner satisfactory to the Debtor, as a result of which such order shall have become final and enforceable in accordance with applicable law; or (b) if an appeal, reargument, certiorari or rehearing thereof has been sought, the order of the lower court has been affirmed by the higher court to which the order was appealed or from which the reargument or rehearing was sought, or certiorari has been denied and time to take further appeal or to seek certiorari or further reargument or rehearing has expired.

1.23 "Greatland" shall mean Greatland LLC, a Florida limited liability company, the lender to the Debtor and the Liquidating Debtor of funds sufficient to pay the Allowed Class 3 Claims in full and such other costs and expenses as Greatland, the Debtor and the Liquidating Debtor may agree.

1.24 "Interest" shall mean equity security in the Debtor pursuant to §101(16) of the Bankruptcy Code.

1.25 "Liquidating Debtor" shall mean the Debtor on and after the Confirmation Date.

1.26 "MLC" shall mean Moore Land and Cattle, LLC, the lessee under a 35-year lease with the Debtor, as lessor, for use of the Real Estate.

1.27 "Petition Date" shall mean December 2, 2010, the date on which Threadneedle Street, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

1.28 "Plan" shall mean this Amended Plan of Liquidation, proposed by the Debtor, as may be amended and/or modified from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.29 "Pre-Petition Claims" shall mean all Claims for debts, liabilities, demands or Claims of any character arising prior to the Petition Date.

1.30 "Priority Claim" shall mean any Allowed Claim which is an Unsecured Claim entitled to priority in payment under §§507(a)(2) to (9), inclusive, of the Bankruptcy Code, but excluding Tax Claims.

1.31 "Professional Persons" shall mean persons, including attorneys, accountants, real estate brokers and financial advisors, employed by the Debtor pursuant to Final Order entered by the Bankruptcy Court, or to be compensated pursuant to §§326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

1.32 "Pro Rata" shall mean (a) with respect to Claims classified under Class 5 in the Plan, the proportion that the amount of a Claim in Class 5 bears to the aggregate amount of all Claims in Class 5 (including Contested Claims until disallowed by Final Order), and (b) with respect to Interests classified under Class 6 in the Plan, the proportion that the number of equity interests owned by a holder of an Interest in Class 6 bears to the aggregate number of all equity interests which are entitled to a particular distribution under Class 6 in accordance with the Plan.

1.33 "Real Estate" shall mean the real estate and improvements owned by the Debtor and situated at 3900-3910 Royal Elk Drive, Eagle, Colorado 81631.

1.34 "Secured Claim" shall mean an Allowed Claim that is secured by a mortgage, deed of trust, lien or security interest on property in which the estate of the Debtor has an interest, or that is subject to set-off under §553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in the estate's interest in such property, or to the extent of the amount subject to set-off.

1.35 "Tax Claim" shall mean any Allowed Claim of a governmental unit that arose prior to the Petition Date and that is entitled to priority under §507(a)(8) of the Bankruptcy Code, but excluding <u>ad valorem</u> Claims or other tax Claims of governmental units, if any, if those Claims under applicable law are secured by a lien on real or personal property of the Debtor's estate.

1.36 "Ultimately Allowed Claim" shall mean any Contested Claim to the extent that it becomes an Allowed Claim in whole or in part.

1.37 "Unclaimed Distributions" shall have the meaning ascribed to it in paragraph 11.1 of the Plan.

1.38 "Unsecured Claim" shall mean any Allowed Claim treated under the Plan that is not an Administrative Claim, Secured Claim, Priority Claim or Tax Claim.

1.39 Unless otherwise stated, all other terms if defined by the Bankruptcy Code, the Bankruptcy Rules, or applicable judicial decisions shall have such defined meanings.

1.40 The words "herein," "hereof" and "hereunder," and other words of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.

1.41 All definitions as may be applicable to the Plan shall be equally applicable to the singular and plural forms of the terms defined.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 "Unclassified Claims" shall mean Administrative Claims.

2.2 "Class 1 Claims" shall mean Priority Claims.

2.3 "Class 2 Claims" shall mean Tax Claims.

2.4 "Class 3 Claims" shall mean the Secured Claims of Aspen D/S Holdings, LLC.

2.5 "Class 4 Claims" shall mean the Allowed Claim, if any, of Diamond Star Ranch Company, LLC.

2.6 "Class 5 Claims" shall mean all Unsecured Claims.

2.7 "Class 6 Interests" shall mean the Interests of all holders of equity security in the Debtor of whatever character, description, nature or liquidation preference.

Unclassified Claims and Claims classified under Classes 1, 2 and 3 in the Plan and Interests classified under Class 6 in the Plan are not impaired under the Plan. Claims classified under Classes 4 and 5 in the Plan are impaired under the Plan.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS
## (ADMINISTRATIVE CLAIMS)

3.1 Each Unclassified Claim shall be paid in full by or on behalf of the Liquidating Debtor upon the entry of a Final Order of the Bankruptcy Court allowing and authorizing the payment of such Unclassified Claim (if an order allowing and authorizing payment of such Unclassified Claim is either sought or required by either the Bankruptcy Code or the Bankruptcy Rules, or both), or on the Effective Date, whichever is later, unless the holder of an Unclassified Claim agrees to less favorable treatment of its Claim, in which event the provisions of the

agreement between the Liquidating Debtor and the claimant with respect to payment of the Unclassified Claim shall govern and shall be incorporated herein by reference.

3.2 All fees payable under Title 28, United States Code §1930, shall be paid in full by the Debtor on or before the Confirmation Date.

## ARTICLE IV
## TREATMENT OF CLASS 1 CLAIMS
## (PRIORITY CLAIMS)

4.1 The holder of each Class 1 Claim shall be paid the full amount thereof in Cash by or on behalf of the Liquidating Debtor upon the entry of a Final Order of the Bankruptcy Court allowing and authorizing the payment of such Class 1 Claim (if an order allowing and authorizing payment of such Class 1 Claim is either sought or required by either the Bankruptcy Code or the Bankruptcy Rules, or both), or on the Effective Date, whichever is later.

## ARTICLE V
## TREATMENT OF CLASS 2 CLAIMS
## (TAX CLAIMS)

5.1 The holder of each Class 2 Claim shall be paid the full amount thereof in Cash by or on behalf of the Liquidating Debtor upon the entry of a Final Order of the Bankruptcy Court allowing and authorizing the payment of such Class 2 Claim (if an order allowing and authorizing payment of such Class 2 Claim is either sought or required by either the Bankruptcy Code or the Bankruptcy Rules, or both), or on the Effective Date, whichever is later.

5.2 The Liquidating Debtor reserves the right to prepay in whole or in part any Class 2 Claim without further interest or penalty.

## ARTICLE VI
## TREATMENT OF CLASS 3 CLAIMS
## (SECURED CLAIMS OF ASPEN D/S HOLDINGS, LLC)

6.1 The holder of the Class 3 Claims shall be paid in Cash the full amount of its Allowed Secured Claims on the later of the Effective Date, or entry of a Final Order allowing the Class 3 Claims.

6.2 Notwithstanding anything contained in paragraph 6.1 to the contrary, the Debtor reserves the right to request entry of an order by the Bankruptcy Court authorizing payment in full of the principal amount due on account of the Class 3 Claims in advance of entry of a Final Order determining the remaining balance of the Class 3 Claims in order to pay said principal amount as soon as possible and to avoid the accrual of additional interest on account of the Class 3 Claims. If practicable, the Debtor will request authority to pay the principal amount due on account of the Class 3 Claims prior to the Confirmation Date.

6.3 If applicable, Adequate Protection Payments shall be paid by or on behalf of the

Liquidating Debtor to the holder of the Class 3 Claims until such time as the principal amount due and owing on account of the Class 3 Claims is paid in full, at which time no further interest shall accrue and become due and payable on account of the Class 3 Claims.

6.4 Contemporaneous with payment in full of the principal amount due on account of the Class 3 Claims, the holder of the Class 3 Claims shall execute and deliver to the Debtor or the Liquidating Debtor, as the case may be, any and all documents as may be requested, necessary or required to cancel, terminate, expunge and release all promissory notes, mortgages, deeds of trust, liens and security interests held by the holder of the Class 3 Claims in and to the Real Estate. If only the principal balance of the Class 3 Claims is paid in full in advance of entry of a Final Order determining the remaining balance of the Class 3 Claims, then the Debtor or the Liquidating Debtor, as the case may be, shall provide such additional security to secure payment in full of the remaining balance of the Class 3 Claims as determined by the Bankruptcy Court to be fair and reasonable under the circumstances presented.

## ARTICLE VII
## TREATMENT OF CLASS 4 CLAIMS
## (CLAIM OF DIAMOND STAR RANCH COMPANY, LLC)

7.1 The holder of the Class 4 Claims is a creditor by virtue of a contract among the holder of the Class 4 Claims and Threadneedle Street, LLC ("Threadneedle") prior to the Petition Date. The Debtor believes Threadneedle's monetary obligations under the contract terminated prior to the Petition Date, and that the contract was not an executory contract on the Petition Date that could be either assumed or rejected by the Debtor upon approval of such decision by the Bankruptcy Court. Absent an agreement among the Debtor and the holder of the Class 4 Claims in this regard, the Debtor intends to seek a determination by the Bankruptcy Court as to whether such contract was an executory contract on the Petition Date.

7.2 If the contract is determined by the Bankruptcy Court, or by agreement of the parties, to have been an executory contract on the Petition Date, then the Debtor elects to assume the contract under the Plan. All amounts due and owing under such assumed executory contract shall be paid in full through two installment payments. The first installment payment shall be in the amount of $25,000.00 and will be paid in Cash on the Effective Date. The second installment payment will be paid in Cash on the Distribution Date.

7.3 If the contract is determined by the Bankruptcy Court, or by agreement of the parties, to not have been an executory contract on the Petition Date, then all Allowed Claims arising under the contract as of the Petition Date shall be treated under Class 5 in the Plan.

## ARTICLE VIII
## TREATMENT OF CLASS 5 CLAIMS
## (UNSECURED CLAIMS)

8.1 In full and final satisfaction of Class 5 Claims, on the Distribution Date the holder of each Class 5 Claim shall be paid in full and in Cash the amount of its Allowed Claim, plus interest at the rate of four percent (4%) per annum from the Petition Date to and including the

Distribution Date; <u>provided, however</u>, if the net proceeds realized from the sale of the Real Estate after payment in full of (a) all amounts due and owing to Greatland as of the Closing Date, (b) all fees, costs, prorations and expenses incurred by the Liquidating Debtor in connection with the consummation of the sale of the Real Estate, and (c) Unclassified Claims, Class 1 Claims, Class 2 Claims and any Class 4 Claims treated under Class 4 in the Plan are insufficient to pay Class 5 Claims in full, then the holders of Class 5 Claims shall be paid Pro Rata from such remaining net proceeds of sale.

8.2 The Liquidating Debtor reserves the right to prepay in whole or in part the Class 5 Claims without further interest or penalty.

## ARTICLE IX
## TREATMENT OF CLASS 6 INTERESTS
## (EQUITY HOLDER INTERESTS)

9.1 All Class 6 Interests shall remain unaltered and are not impaired by the Plan.

11.2 On the Effective Date, all net proceeds realized from the sale of the Real Estate, after payment in full of (a) all amounts due and owing to Greatland as of the Closing Date, (b) all fees, costs, prorations and expenses incurred by the Liquidating Debtor in connection with the consummation of the sale of the Real Estate, and (c) Unclassified Claims, Class 1 Claims, Class 2 Claims, Class 4 Claims and Class 5 Claims in accordance with the Plan, shall be distributed Pro Rata to the holders of the Class 6 Interests.

## ARTICLE X
## MEANS FOR EXECUTION OF THE PLAN

10.1 The Debtor or the Liquidating Debtor, as the case may be, shall pay from the DIP Loan those expenses associated with the administration of the chapter 11 case, including all quarterly fees due and payable to the Office of the United States Trustee fees, and all fees, costs and expenses of Professional Persons as allowed by the Bankruptcy Court after notice and a hearing.

10.2 On and after the Confirmation Date, MLC, as lessee, shall pay on behalf of the Liquidating Debtor (a) all costs and expenses necessary and required to preserve, maintain and protect the Real Estate, (b) all Adequate Protection Payments which become due and payable, if any, after the Confirmation Date, and (c) all principal and interest due and owing under the DIP Loan upon such terms as MLC and the lenders under the DIP Loan may agree.

10.3 On or before the Confirmation Date, the Debtor shall request approval of the Bankruptcy Court of the terms and conditions of the secured financing to be provided to the Debtor and the Liquidating Debtor by Greatland. It is contemplated that Greatland will provide a line of credit in the original principal amount of not less than $3,950,000.00. Interest shall accrue on the unpaid principal balance at the rate of twelve percent (12%) per annum. Payments thereon shall be due and payable as follows:

    a. Partial interest only of seven percent (7%) per annum of the outstanding principal balance in equal quarterly payments commencing on the first Business Day occurring three months after the first draw under such line of credit and continuing on the first Business Day of each quarter thereafter. The remaining five percent (5%) per annum shall be accrued and be payable on the Closing Date;

    b. All principal and accrued and unpaid interest shall be due and payable on the Closing Date; and

    c. The entire principal balance and accrued and unpaid interest may be prepaid at any time prior to the Closing Date, but if the prepayment is made within the first twelve (12) months after the first draw under the line of credit, such prepayment shall include all accrued and unpaid interest, all principal owed, plus $250,000.00. Prepayment may be made at any time after such initial twelve-month period without penalty.

    10.4 Greatland's claim shall be secured by a first deed of trust on the Real Estate and an assignment of rents. Upon payment in full of Greatland's secured claim, Greatland shall execute and deliver to the Liquidating Debtor any and all documents as may be requested, necessary or required to cancel, terminate, expunge and release all promissory notes, mortgages, deeds of trust, liens and security interests held by Greatland in and to the Real Estate.

    10.5 Funds borrowed by the Debtor and/or the Liquidating Debtor, as the case may be, from Greatland shall be used to pay (a) the Class 3 Allowed Claims in full, (b) all costs and expenses incurred by the Debtor and/or the Liquidating Debtor to repair the fire damage to the Real Estate which occurred in April 2010, and (c) any other costs and expenses as Greatland and the Debtor and/or the Liquidating Debtor may agree; provided, however, such borrowings by the Debtor and/or the Liquidating Debtor shall not exceed the amount of the line of credit extended by Greatland to the Debtor and/or the Liquidating Debtor.

    10.6 Pursuant to Final Order entered by the Bankruptcy Court, the Debtor has employed Ranch Marketing Associates as Professional Persons to assist the Liquidating Debtor in the marketing and sale of the Real Estate.

    10.7 The Liquidating Debtor and its Professional Persons shall exercise their best efforts to sell the Real Estate pursuant to paragraph 10.6 above on or before September 15, 2013. If the Closing Date has not occurred by September 15, 2013, then the Liquidating Debtor shall sell the Real Estate through a nationally advertised public auction on or before November 15, 2013.

    10.8 Prior to the deadlines set forth in paragraph 10.7 above for the sale of the Real Estate, the Liquidating Debtor may elect to refinance the indebtedness secured by the Real Estate, in which case the proceeds realized therefrom shall be distributed pursuant to this Plan as if the Real Estate had been sold to a third party; provided, however, the Liquidating Debtor shall not consummate any such refinancing transaction unless the proceeds realized therefrom are sufficient to pay in full all amounts then due and owing to Greatland and all Allowed Claims

treated under the Plan.

10.9 Except as otherwise provided in the Plan, the Disbursement Agent shall make all payments required to be made under the Plan to and for the benefit of all Creditors whose Claims are treated under the Plan.

10.10 Confirmation of the Plan shall be subject to a refinancing as provided in paragraph 10.8 above, or the liquidation of all of the property of the Debtor, the Liquidating Debtor and the Debtor's bankruptcy estate. Consequently, the need for further financial reorganization of the Debtor and the Liquidating Debtor is not contemplated by the Plan.

10.11 No governmental regulatory commission has jurisdiction over the rates of the Debtor, and therefore no approval of any such commission is necessary or required.

10.12 The Debtor does not maintain any retirement benefit plans, and therefore the Plan need not provide for the continuation of any such plans pursuant to §§1114 and 1129(a)(13) of the Bankruptcy Code.

10.13 On the Confirmation Date, the Liquidating Debtor shall implement such amendments and revisions, if any may be needed, to its articles of formation and by-laws to effectuate the transactions contemplated by the Plan.

10.14 The Debtor reserves the right, pursuant to §1129(b) of the Bankruptcy Code, to request the Bankruptcy Court to confirm the Plan if all applicable requirements of §1129(a) of the Bankruptcy Code other than §1129(a)(8) are met.

10.15 The Liquidating Debtor shall prosecute all objections to Claims, without prejudice to any other Creditor asserting an objection to a Claim.

10.16 The Debtor, the Liquidating Debtor and the Disbursement Agent, and their respective Professional Persons, directors, officers, members, managers, employees and agents, shall exercise ordinary care in the discharge of their respective duties under the Plan. After the Confirmation Date, all such entities and persons shall not be subject to any cause of action by any party or Creditor for any act which they took in the reasonable exercise of their business judgment or that was approved by the Bankruptcy Court prior to the Closing Date.

10.17 All reasonable fees and expenses earned and incurred by the Disbursement Agent, if any, shall be paid by the Liquidating Debtor.

10.18 The Liquidating Debtor may pursue a claim listed in the Debtor's Schedules against Lake Forest Bank and Trust Company if said claim in the sole discretion of the Liquidating Debtor and after due diligence should be pursued for the benefit of the Liquidating Debtor and Creditors. The Debtor was authorized by the Bankruptcy Court to employ George L. Grumley and the law firm of Grumley, Kamin, Wexler & Rosic, LLC of Chicago, Illinois to investigate the merits of any such claim and to prosecute such claim if deemed prudent to do so. Any recovery of compensatory damages from that claim will be used first to pay the holder of

the Class 4 Claims if and to the extent such Claims are treated under Class 4 in the Plan, and any remaining funds will be paid to the holders of Class 5 Claims Pro Rata up to the full amount of their Claims, plus interest as provided in the Plan. Any punitive damages awarded on account of that claim shall be paid to Paul A. Moore in an amount equal to three times the amount of fees and costs incurred by him on behalf of the Liquidating Debtor to pursue the claim, and the remaining balance of any such punitive damage award shall be divided among Paul A. Moore and the Liquidating Debtor on the basis of 75% and 25%, respectively.

## ARTICLE XI
## DISTRIBUTIONS TO CREDITORS

11.1 "Unclaimed Distributions" shall mean any distribution of Cash to which a Creditor is entitled and which such Creditor has not claimed on or before six (6) months following the date on which such distribution is returned as undeliverable, and all interest thereon, shall be promptly delivered to the Disbursement Agent, to be held in a special account subject to the Final Distribution provisions set forth below. At the end of said period set forth for Final Distribution, the holders of Allowed Claims theretofore entitled to distributions which remain unclaimed shall cease to be entitled thereto, and the unclaimed distributions, plus all interest earned thereon, shall become the sole and exclusive property of the Liquidating Debtor.

11.2 "Final Distribution" shall constitute the last payment to Creditors under the Plan. On the date on which all Claims in each class of Claims are allowed or otherwise resolved pursuant to Final Order, the Disbursement Agent shall make a final recalculation of the distributions to the holders of Class 5 Claims, taking into account the resolution of Contested Claims and Ultimately Allowed Claims, and distributions made and permitted under the Plan. Upon completion of such final recalculations, the Disbursement Agent shall make any additional payments as may be required pursuant to the Plan.

## ARTICLE XII
## REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

12.1 In addition to any and all other executory contracts and unexpired leases heretofore assumed by the Debtor pursuant to §365 of the Bankruptcy Code, the Debtor hereby elects to assume its unexpired lease with MLC; provided, however, said lease shall be deemed terminated and of no further force and effect as of the Closing Date.

12.2 The treatment of the executory contract, if any, among Threadneedle and the holder of the Class 4 Claims is set forth in Article VII above.

12.3 All executory contracts and unexpired leases of Threadneedle entered into prior to the Petition Date and that are not assumed or rejected by the Debtor pursuant to §365 of the Bankruptcy Code prior to the Confirmation Date, or assumed by the Debtor pursuant to this Article and the Confirmation Order, shall be deemed rejected on the Confirmation Date.

12.4 Each non-debtor party to an executory contract or an unexpired lease rejected hereunder shall have thirty (30) days from the Confirmation Date to file a proof of claim with the

Bankruptcy Court asserting damages arising from such rejection, or be forever barred from asserting any such Claim. Contemporaneous with the filing of such proof of claim, said non-debtor party shall serve a copy of the proof of claim upon the parties specified and in accordance with the terms contained in paragraph 16.2 below.

12.5 Any proof of claim filed pursuant to paragraph 12.4 above that becomes an Allowed Claim shall be treated under Class 5 in the Plan.

## ARTICLE XIII
## MODIFICATION OF THE PLAN

13.1 Without order of the Bankruptcy Court and at any time before the Confirmation Date, the Debtor may amend or modify this Plan, provided that such Plan, as amended or modified, meets the requirements of §§1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with §1125 of the Bankruptcy Code.

13.2 The Plan may be modified at any time after confirmation and before its substantial consummation, provided such Plan, as modified, meets the requirements of §§1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms such Plan, as modified, under §1129 of the Bankruptcy Code, and the circumstances warrant such modification.

13.3 A holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time specified by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XIV
## PROCEDURES FOR RESOLVING CONTESTED CLAIMS

14.1 To the extent that an objection relates only to a portion of a Claim, the remainder of such Claim shall be deemed an Allowed Claim, and only that portion of the Claim as to which an objection has been filed shall be deemed a Contested Claim.

14.2 At the time of any distributions to Creditors provided for under the Plan, the Disbursement Agent shall reserve the amount of Cash as it deems necessary and appropriate to account for all Contested Claims. The Disbursement Agent shall hold funds so reserved pursuant to this subparagraph and not distribute such funds to other Creditors. Upon any such Contested Claim becoming an Ultimately Allowed Claim, the amount of Cash then due to the holder of such Ultimately Allowed Claim shall be distributed to such Creditor in accordance with the Plan. Such distributions to each holder of a Contested Claim that becomes an Ultimately Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the class of Claims to which the respective holder of such Ultimately Allowed Claim belongs. The distributions to holders of such Ultimately Allowed Claims shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order. Unless and until a Contested Claim becomes an Ultimately Allowed Claim, no

holder of a Contested Claim shall have any Claim against the Cash reserved on account of such Contested Claim.

## ARTICLE XV
## CORPORATE GOVERNANCE OF THE REORGANIZED DEBTOR

15.1 On and after the Confirmation Date, and subject to the by-laws of the Liquidating Debtor, the sole manager of the Liquidating Debtor shall be Paul A. Moore, who shall serve without compensation.

15.2 No dividends or distributions shall be paid to any of the equity holders of the Liquidating Debtor until such time as all distributions required under the Plan have been made.

## ARTICLE XVI
## GENERAL PROVISIONS

16.1 Extension of Payment Dates: If any payment under the Plan falls due on a Saturday, Sunday or other day which is not a Business Day, then such due date shall be extended to the next following Business Day.

16.2 Notices: Any notice hereunder to the Liquidating Debtor shall be in writing and, if by telegram, telex, or facsimile, shall be deemed to have been given when sent, and if mailed, shall be deemed to have been given three (3) days after the date when sent by registered or certified mail, postage prepaid, and addressed as follows:

If to the Debtor or Liquidating Debtor:

Threadneedle Street, LLC
Attn: Paul A. Moore, Manager
500 North Waukegan Road
Lake Forest, Illinois 60045

With a copies to:

David M. Rich
Onsager, Staelin & Guyerson, LLC
1873 S. Bellaire St., Suite 1401
Denver, Colorado 80222
Ph: (303) 512-1123
Fax: (303) 512-1129
drich@osglaw.com

and

14

>Charles S. Stahl, Jr.
>Swanson, Martin & Bell, LLP
>2525 Cabot Drive, Suite 204
>Lisle, Illinois 60532
>Ph: (630) 799-6990
>Fax: (630) 799-6901
>cstahl@smbtrials.com

  16.3 Transfer of Claims: In the event that the holder of any Claim shall transfer such Claim, it shall immediately advise the Liquidating Debtor in writing of such transfer by giving written notice in accordance with paragraph 16.2, above. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken hereunder and, except as otherwise expressly provided in such notice, the Liquidating Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under the Plan of the transferor.

  16.4 Captions: Paragraph captions used in the Plan are for convenience only and shall not affect construction of the Plan.

  16.5 Severability: Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

  16.6 Successors and Assigns: The rights and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors or assigns of such person or entity.

## ARTICLE XVII
## RETENTION OF JURISDICTION

  17.1 Notwithstanding confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes:

  a. Determination of the allowability of Claims, upon objection to such Claims by any party in interest;

  b. Determination of requests for payment by Professional Persons and Claims entitled to priority under §§503 and 507 of the Bankruptcy Code, including compensation of parties entitled thereto;

  c. Resolution of controversies and disputes regarding interpretation of the Plan, and the entry of orders in aid of implementation of the Plan;

  d. Modification of the Plan pursuant to §1127 of the Bankruptcy Code;

  e. Adjudication of any causes of action brought by the Debtor or the Liquidating Debtor, provided that the Bankruptcy Court had jurisdiction to hear and determine any such causes of action prior to the Confirmation Date; and

  f. Entry of a final decree closing the Debtor's case.

## ARTICLE XVIII
## EFFECT OF CONFIRMATION

  18.1 Except as otherwise provided in the Plan or the Confirmation Order, the confirmation of the Plan shall bind the Debtor, the Liquidating Debtor and all holders of Claims against and Interests in the Debtor and its estate, whether or not the foregoing persons and entities are impaired under the Plan and whether or not any of the foregoing persons or entities have voted on or accepted the Plan.

  18.2 Except as otherwise provided in the Plan or the Confirmation Order, all of the property of the Debtor's estate, including any and all causes of action as might be available to the Debtor, shall be vested in the Liquidating Debtor on the Confirmation Date, subject to any obligations secured thereby and to the provisions of the Plan.

  18.3 Except as provided for in §§1141(d) of the Bankruptcy Code, and except as otherwise provided in the Plan or in the Confirmation Order, on the Confirmation Date the property of the Debtor's estate shall be free and clear of all mortgages, deeds of trust, liens, security interests, Interests and Claims.

  [remainder of page left blank]

# ARTICLE XIX
# OTHER MATERIALS

     19.1   The attention of holders of Claims and Interests is directed to the Disclosure Statement accompanying the Plan, as approved by the Bankruptcy Court, after notice and a hearing.

Dated: June 10, 2011

                       Respectfully submitted,

                       THREADNEEDLE STREET, LLC

                       By: /s/ *Paul A. Moore*
                       Its     Manager

                       **Onsager, Staelin & Guyerson, LLC**
                       /s/ *David M. Rich*
                       David M. Rich  #15211
                       1873 S. Bellaire St., Suite 1401
                       Denver, Colorado 80222
                       Ph: (303) 512-1123
                       Fax: (303) 512-1129
                       drich@osglaw.com

                       and

                       **Swanson, Martin & Bell, LLP**
                       /s/ *Charles S. Stahl, Jr.*
                       Charles S. Stahl, Jr. (Illinois. No. 02699915)
                       2525 Cabot Drive, Suite 204
                       Lisle, Illinois 60532
                       Ph: (630) 799-6990
                       Fax: (630) 799-6901
                       cstahl@smbtrials.com